**In re AMERITECH CORPORATION, Plaintiff.**

**Ameritech Mobile Communications, Inc., Plaintiff/Counterdefendant,**

v.

**Computer Systems Solutions, Inc., Defendant/Counterplaintiff.**

No. Civ.A. 97 C 7932.

United States District Court, N.D. Illinois, Eastern Division.

July 14, 1999.

Larry D. Drury, Larry D. Drury, Ltd., Chicago, IL, for defendant/counterplaintiff.

Robert A. Chapman, Robert A. Chapman & Associates, Chicago, IL, for defendant/counterplaintiff.

Helen E. Witt, Michael E. Berg, Kirkland & Ellis, Chicago, IL, for plaintiffs/counterdefendant.

## ORDER

KENNELLY, District Judge.

The Court has before it a Report and Recommendation by Magistrate Judge Denlow dated 4/13/99 (40–1) concerning defendant's oral motion for leave to file a second amended counterclaim. No objections have been filed. The Court accepts the Report and Recommendation. Defendant's oral motion for leave to file a second amended counterclaim is denied. This case remains set for status on 7/1/99 at 10:00 a.m.

## REPORT AND RECOMMENDATION

MORTON DENLOW, United States Magistrate Judge.

Ameritech Corporation ("Ameritech") and Ameritech Mobile Communications, Inc., ("AMC", collectively "Plaintiffs") brought an eight-count first amended complaint against Computer Systems Solutions, Inc. ("Defendant"). Defendant filed a counterclaim and later filed a first amended counterclaim. Discovery is now closed. Defendant now brings a motion for leave to file its second amended counterclaim to include a new claim for breach of contract and class allegations. The Court concludes that Defendant's motion for leave to file its second amended counterclaim should be denied without prejudice to Defendant's right to file a separate class action lawsuit.

### I. BACKGROUND FACTS

Plaintiffs are in the business of offering cellular communications and paging equipment services to the general public through authorized AMC dealers. Defendant is a former sales agent of Plaintiffs and resells cellular telephone and paging equipment and services, and computer equipment and related services. On November 13, 1997, Ameritech filed a seven-count complaint against the Defendant alleging violations of the Lanham

Act, 15 U.S.C. §§ 1114, 1125(c) and 1125(a), and supplemental state law claims, arising out of the contractual relationship between the parties. Plaintiffs allege that Defendant used Plaintiffs' trademarks without authorization and further, failed to pay for purchased equipment. On December 19, 1997, Plaintiffs filed a first amended complaint adding AMC as an additional plaintiff and adding count eight for breach of contract.

On March 18, 1998, Defendant filed a two-count counterclaim against AMC alleging claims for breach of contract and equitable recoupment. Defendant alleged that AMC violated the implied covenant of good faith and fair dealing when AMC terminated the cellular agreements with Defendant. Defendant further claimed that this termination denied Defendant an opportunity to recoup its investment and unrecovered expenditures which it was required to make as AMC's agent.

On April 29, 1998, Defendant filed its first amended counterclaim adding Count III which alleged that AMC violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1. Count III alleged a secret "plan, practice and policy" on the part of AMC to terminate Defendant and other independent AMC agents in violation of the act.

On May 13, 1998, the parties filed a joint discovery plan with a discovery cut-off date of September 24, 1998. Case dispositive motions were to be filed by October 8, and all motions *in limine* and the Joint Pretrial Order were to be submitted by October 29, 1998. Defendant voluntarily dismissed Count III of its first amended counterclaim on September 28. Settlement negotiations with Judge Williams were unsuccessful. All discovery is now complete.

On January 15, 1999, Defendant made an oral motion for leave to file a second amended counterclaim to allege an additional breach of contract claim and class allegations. The new breach of contract claim alleges violations of the covenant of good faith and fair dealing by transferring Defendant's accounts and account maintenance fees to other AMC agents. The second amended counterclaim added class allegations on behalf of:

> [I]tself and all other AMC dealers whose residuals have been transferred by AMC to other dealers including, but not limited to AMC corporate dealers from 1992 to the present, exclusive of the Plaintiff/Counter-defendants, members of their immediate families and the legal representatives, heirs, successor or assigns of the Counter-defendants.

Def.'s Second Amd. Countercl. ¶ 23. No discovery into the class allegations or the possible claims by members of the putative class was taken before the close of discovery.

## II. RULE 15 STANDARD FOR AMEND-ING COUNTERCLAIM

At issue is whether Defendant should be granted leave to file a second amended counterclaim. Rule 15(a) states in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ...

Fed.R.Civ.P. 15(a).

After a responsive pleading has been served, a party must seek leave from the court or written consent of the adverse party. *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990). Leave to amend is generally "freely given as justice requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). This mandate must be heeded to enable the plaintiff to test a claim on its merits when the underlying facts relied upon by the plaintiff are a proper subject of relief. *Id.*

■■■ The right to amend a complaint is not absolute. *Perkins v. Silverstein*, 939 F.2d 463, 471–472 (7th Cir.1991). An amendment is inappropriate when there is "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or

futility of the amendment." *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991). The determination of whether to grant an amendment to a complaint is within the sound discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Campbell v. Ingersoll Milling Mach. Co.,* 893 F.2d 925, 927 (7th Cir.1990).

## A. PREJUDICE TO OPPOSING PARTY

The Court concludes that Defendant's motion for leave to file its second amended counterclaim should be denied because Plaintiffs would be substantially prejudiced by the addition of class allegations when discovery is closed. The allowance of this amendment would result in injustice to Plaintiffs because of the delay and the necessity of substantial additional discovery. Further, Defendant does not have an adequate justification for amending the counterclaim at this late stage.

 Virtually every amendment results in some degree of prejudice to an opposing party because of the potential for additional discovery and trial delay. *Lanigan v. La-Salle National Bank,* 108 F.R.D. 660, 661 (N.D.Ill.1985). Prejudice to the opposing party is the most important factor in determining whether to allow an amendment to a complaint. *Zenith,* 401 U.S. at 330–331, 91 S.Ct. at 802–803. A motion for leave to amend will be denied when the timing of such amendment would cause "undue prejudice" to the opposing party. *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993). Undue prejudice occurs when the amendment "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint" and when the additional discovery is expensive and time-consuming. *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385 (N.D.Ill. 1975).

 To determine whether sufficient prejudice exists to justify denial of an amendment, the Court balances the respective interests of the parties. *American Broadcasting Co., Inc. v. Maljack Prod., Inc.,* No. 97 C 6510, 1998 WL 325209 at *1 (N.D.Ill. June 9, 1998). This balancing "entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Federal Practice and Procedure* § 1487 at 621–623 (1990).

Plaintiffs will be substantially prejudiced if the Court were to grant Defendant's motion. Plaintiffs would suffer hardship by being forced to re-open discovery as to Defendant's class allegations. A class action suit is substantially different from the pending action because class discovery issues are complex and time consuming. Fed.R.Civ.P. 23. Defendant is free to initiate a new class action lawsuit.

### 1. Defendant Unduly Delayed in Seeking Leave to Amend

The first issue presented is whether the Defendant unduly delayed in seeking leave to file its second amended counterclaim. Plaintiffs argue that allowing the Defendant to amend its counterclaim would result in needless delay because of the additional discovery and motions that would result. Defendant argues that no substantial delay would result from the amendment because no trial date has been set and because Plaintiffs were aware of the facts contained in the second amended counterclaim before its filing. The Court finds that Defendant unduly delayed in filing its motion.

 Leave to amend shall be freely given "in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, etc...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). Delay, in and of itself, does not constitute a sufficient basis for denying a motion to amend. *See Tragarz v. Keene Corp.,* 980 F.2d 411, 432 (7th Cir.1992). However, the longer the delay, "the greater the presump-

tion against granting leave to amend." *Tamari v. Bache & Co. S.A.L.*, 838 F.2d 904, 909 (7th Cir.1988). Therefore, the correct inquiry is whether the proposed delay will result in undue prejudice to the opposing party. *See Tragarz*, 980 F.2d at 432; *see also Jones v. Hamelman*, 869 F.2d 1023, 1026–27 (7th Cir.1989) (extreme tardiness in amending complaint which results in prejudice to the defendants outweighs general policy behind Rule 15). The classic situation in which courts deny leave to amend is when a party files its motion for leave after discovery has been completed or when the nonmoving party has filed for summary judgment. *Cresswell v. Sullivan Cromwell*, 922 F.2d 60, 72 (2d Cir.1990).

The delay causes prejudice to Plaintiffs. "Delay and prejudice … reinforce each other." *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630, 634 (Fed.Cir.1985). When a party fails to apprise the opposing party of the "possibility of a class action amendment at the earliest possible date" and the opposing party "expends time and resources in shaping the litigation as an individual lawsuit, it would be unduly prejudicial to impose upon that [party] the added expense and complexity of a class action." *King v. Motor Freight Express, Inc.*, No. 78 C 4133, 1980 WL 18238 at * 2 (N.D.Ill. July 28, 1980). *See also Gee v. Dillard Texas Operating Ltd.*, No. 96–CV–0848–D, 1996 WL 734948 at * 1 (N.D.Ill.Dec. 11, 1996) (denying an amendment to maintain a class action and stating that the plaintiff could initiate the class action claim separately and dismiss it from the instant suit, leaving for litigation the claims that were not coterminous).

Defendant offered the proposed amendment more than a year after commencement of this action and over eight months after it served the first amended counterclaim on the Plaintiffs. Defendant did not attempt to add class allegations prior to the close of discovery. The first notification of a possible second amendment arose in a telephone pretrial conference between the parties and Judge Williams on November 24, 1998, two months after the close of discovery. Defendant waited until January 15, 1999 to orally motion the Court for leave to amend.

Defendant waited until after the close of discovery, plus an additional three months to file its proposed second amended counterclaim. Defendant admits that the "factual issues addressed in the Second Amended Counterclaim have been at issue for some time." (Def.'s Reply Brief at 5). Where the party seeking an untimely amendment knows or should have known of the facts upon which the proposed amendment is based, but fails to assert them in a timely fashion, the amendment will be denied. *See Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1304, (7th Cir.1993) (leave to file third amended complaint denied when motion was made six months after plaintiff's learned of the allegations but failed to seek an amendment until faced with summary judgment). Therefore, the Court concludes that Defendant unduly delayed because it was aware of the probable class allegation claim but did not seek to amend until long after the close of discovery.

### 2. Defendant's Proposed Amendment Imposes Substantial Additional Discovery

The second issue presented is whether Defendant's second amended counterclaim would result in substantial additional discovery, thereby causing undue prejudice to Plaintiffs. Plaintiffs argue that because discovery is closed, the addition of a new claim and class allegations would require the reopening of discovery. Without reopening discovery, Plaintiffs would be deprived of the opportunity to appropriately defend the class allegations. Plaintiffs further contend that reopening of discovery would cause an unnecessary and prejudicial expenditure of time and money. Defendant argues that Plaintiffs took significant discovery regarding the issues raised in the proposed second amended counterclaim and that substantial additional discovery would not result because Plaintiffs were free to question any deponents regarding these issues. Being free to ask is not the same as knowing that the issues are in the case.

The Seventh Circuit has held that it is proper to refuse an amendment where it creates "new complex and serious charges" which undoubtedly require additional discovery in conjunction with a fast-approaching trial date. *Ferguson v. Roberts,* 11 F.3d 696, 706 (7th Cir.1993). *See also Johnson v. Methodist Medical Center of Illinois,* 10 F.3d 1300, 1304 (7th Cir.1993) (engaging in substantial additional discovery causes prejudice to opposing party when movant is allowed to amend).

In the instant case, a review of the proposed second amended complaint indicates that it raises issues not addressed in prior counterclaims. Discovery would have to be reopened in order to allow AMC to respond to the new class allegations concerning all former agents' contracts from 1992 to present. As a result, Plaintiffs would be forced to expend significant additional resources. Because Plaintiffs' discovery was directed to the sole allegation of the specific contractual relationship between Plaintiffs and Defendant, additional extended discovery of all prior contractual relationships with former agents including an accounting of residuals and other fees AMC's agents would have earned under the cellular agreements would lead to substantial additional discovery. The proposed amendment would add hundreds of class members and would require extensive discovery on each agent's: 1) individual contract with AMC; 2) compensation schedule; 3) calculated damages based on unique sales and account maintenance history; and, 4) numerous state laws governing the breach of each contract claim. Plaintiffs would have to engage in nation-wide discovery, a position Plaintiffs clearly were not required to undertake when originally conducting discovery on Defendant's prior counterclaims.

Moreover, class certification under Rule 23 requires costly discovery and briefing, apart from the merits of the litigation. *See Skokie Gold Standard Liquors v. Joseph E. Seagram,* 99 F.R.D. 108, 110 (N.D.Ill.1983). Plaintiffs would be substantially prejudiced if the Court ordered the re-opening of discovery to investigate these new class allegations. In *Skokie Gold Standard Liquors v. Joseph E. Seagram,* 99 F.R.D. 108 (N.D.Ill.1983) the court denied the plaintiff's request to amend the complaint to include class allegations over two years after the action was originally brought. The court found that multiple difficulties would arise in attempting to meet the Rule 23(b)(3) requirements of a class action. *Id.* at 110. First, the court found that class certification would require a diversion of litigants' and the court's resources away from the substantive focus of the litigation. *Id.* Second, the court found that the questions common to the class members would predominate over those affecting the individual class members as mandated by Rule 23(b)(3). *Id.* However, each individual's damages would involve separate factors and when proven separately, would create a multitude of "minitrials." *Id.* Thirdly, the court found that individual class notice to members was substantial and thereby created yet another diversion from the lawsuit's main purpose. *Id.* Lastly, the court found that incoming class members may not be content with the present discovery completed and would be entitled to engage in additional discovery before litigation. *Id.*

Applying these specified factors to the instant case, the Court concludes that amending the present counterclaim to include class allegations at this stage would cause problems similar to those in *Skokie.* First, the requirements of Rule 23 would cause both parties, as well as the Court, to divert its focus from the underlying claims to certification requirements, including discovery and extended briefing on certification issues. Second, assuming the four prerequisites of Rule 23(a) could be met, there exists considerable question as to what questions would predominate. It is not clear whether the questions common to Plaintiffs and Defendant are common to the class members when Plaintiffs have brought an eight count complaint against Defendant for multiple violations involving the Lanham Act, 15 U.S.C. §§ 1114, 1125(c) and 1125(a), the Illinois Anti–Dilution Act, 765 ILCS § 1035/15, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.,* and the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505, *et seq.* Moreover, each class member's damages may differ as to the determination of account trans-

fers, residuals, interest charges, and other fees, creates the possibility of conducting hundreds of minitrials. Thirdly, the attempt at identifying all prior agents who engaged in identical contracts as Defendant and whose contracts terminated similarly as Defendant's would cause Plaintiffs of additional discovery and further divert their attention. Lastly, as in *Skokie,* incoming class members may not be content with the present discovery of Defendant and wish to conduct additional discovery, thereby causing further delay in this case. Thus, the Court concludes that defending class allegations after the close of discovery, would cause undue prejudice to the Plaintiffs.

### 3. Defendant Does Not Have a Valid Reason for Delaying

The third issue presented is whether Defendant has a valid reason for the delay in seeking leave to amend. Plaintiffs argue that Defendant did not amend its counterclaim on the basis of any newly discovered evidence and instead engaged in gamesmanship. Defendant's explanation for delay in filing its second amended complaint was that both parties failed to adhere to the "Proposed Discovery Plan" and that both parties were engaged in attempts at settling the case. The Court finds Defendant's explanations unpersuasive.

The burden rests upon the movant to show a valid reason for delay. *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 775 (7th Cir.1995). A denial of the motion is warranted when a party fails to "provide an explanation as to why the amendment did not take place sooner" and its delay is burdensome to the opposing party. *Hindo v. University of Health Sciences,* 65 F.3d 608, 615 (7th Cir.1995). Parties have an obligation to introduce, at the earliest stage of the litigation possible, the matters upon which they want to rely in supporting their claim or defense. 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Federal Practice and Procedure,* § 1488 at 692 (1990).

Defendant has failed to meet its burden of showing some valid reason for delay. Defendant does not argue that discovery led to previously unknown facts which altered the shape of the case. *Compare Lippert Marketing, Ltd. v. Kingwood Ceramics, Inc.,* No. 95 C 6490, 1997 WL 527282 at *3 (N.D.Ill. August 19, 1997) (stating that plaintiff's reason for filing its untimely amendment was sufficient when the discovery gained was key to determining whether or not there were sufficient facts to allege a cause of action). Defendant's delay in pursuing the class allegations coupled with Defendant's failure to show a valid reason for the delay persuades the Court to exercise its discretion and deny the motion to amend the counterclaim.

### B. SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED

Plaintiffs argue that the proposed second amendment is futile in that the requirements for supplemental jurisdiction are non-existent, the new breach of contract claim fails to state a claim, and the class certification cannot be met. Defendant argues that the Court should grant supplemental jurisdiction and that the new breach of contract count states a claim.

28 U.S.C. § 1367 states in relevant part:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(2) and (c)(4).

It is within the district court's discretion to deny to exercise supplemental jurisdiction. *Channell v. Citicorp Nat'l Servs., Inc.,* 89 F.3d 379, 387 (7th Cir.1996). The Court concludes that Defendant's proposed class allegations substantially predominate over the claims in which the Court has original jurisdiction. 28 U.S.C. § 1367(c)(2). Additionally, the "difficulties of administering this case as a defendant class action amount to a 'compelling' argument for relinquishing jurisdiction" pursuant to 28 U.S.C. § 1367(c)(4). *Channell,* 89 F.3d at 387.

The Court further concludes that it is premature to address the merits or the class

certification issues. If and when the Defendant files a new class action lawsuit these defenses can be raised and litigated.

## III. RULE 16 STANDARD FOR AMENDING SCHEDULING ORDER

The last issue presented is whether the "good cause" standard of Rule 16(b) is applicable to the case at hand. Plaintiffs argue that Rule 16 applies to Defendant's motion for leave to file its second amended counterclaim because the discovery cut-off date was September 24, 1998. Defendant argues that Rule 16 is not applicable because there is no order limiting the time when a party can bring an amended pleading. The Court concludes that Rule 16 is not applicable to the instant case. The record does not reflect that the Court entered a scheduling order limiting the time in which a party could amend its pleadings, nor a limit on the time permitted to join other parties.

## IV. CONCLUSION

**The Court recommends that Defendant's motion for leave to file its second amended counterclaim be denied.** Defendant was unjustified in its delay and the unwarranted delay would cause substantial prejudice to Plaintiffs. The class action claims would predominate over the original claims. Defendant is free to file a separate class action lawsuit. This action should proceed towards trial on its present issues.

**Date: April 23, 1999.**